**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**UNITED STATES OF AMERICA**

**v. Case No. 2:16-cr-62-FtM-99MRM**

**ERIC DAVID ERDMANN**
**a/k/a Eric Erdman**
**_______________________________/**

**DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR MATERIAL WITNESS VIDEOTAPED DEPOSITION**

The Defendant, ERIC DAVID ERDMANN, by and through undersigned counsel, hereby respectfully submits this Reply to the United States' Response to Defendant's Motion for Material Witness Videotaped Deposition and, in support, states as follows:

1. **Mr. Erdmann Has Made Every Reasonable Effort to Make Ms. Pol Available To Testify in the United States.**

In or about July 2016, Ms. Pol sought a B1/B2 visa for business purposes. United States' Response, Doc. 29, pg. 8. The business purpose was testifying at Mr. Erdmann's trial pursuant to a subpoena. Ms. Pol had no intention of immigrating to the United States or staying for a longer time, but rather to testify and quickly return to Cambodia—her home. Her application for visa was rejected on August 16, 2016 by the United States. *See* Exhibit "A" Letter from the Embassy of the United States of America, Phnom Penh, Cambodia.

The United States now suggests that the defendant has not made a "good-faith effort" because Ms. Pol did not seek a K-3 visa for a spouse or a K-1/K-2 visa for a fiancée. United States' Response, Doc. 29, pg. 8. The Government cites *United States v. Johnpoll*, 739 F.2d 702, 709 (2nd Cir. 1984) (*citing California v. Green*, 399 U.S. 149, 189 n.22, 90 S.Ct. 1930, 1951, n.

22 (1970)—which, in addition to what is cited by the Government, states that "[t]he lengths to which the prosecution must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness." The problem with the Government's argument is that a K-3 or K-1/K-2 visa takes much longer to get and is not reasonable concerning the time restraints of the trial calendar.

Ms. Pol[1] and Mr. Erdmann could have sought a K-1/K-2 visa for a fiancée. However, pursuant to U.S. Department of Homeland Security's website, such a visa pursuant to Form I-129F would take at least 5 months to obtain. *See* Exhibit "B", USCIS Processing Time Information for the California Service Center, pg. 1. A K-1/K-2 visa would allow Ms. Pol to come to the United States for up to 90 days prior to her marriage to Mr. Erdmann, and would involve a much more intensive background search by the U.S. Department of Homeland Security. *See* Exhibit "C", Form I-129F & Instructions. Because of the time limits relating to the scheduling of trial, a K-1/K-2 was neither practical nor realistic nor fit the objective of Ms. Pol—which is to testify and quickly go home.

In sum, Mr. Erdmann had Ms. Pol pursue the appropriate visa—a business visa—for a short business trip to testify. The United States Government denied that visa because of her lack of ties to Cambodia indicating a likelihood that she would return to Cambodia. *See* Exhibit "A". Mr. Erdmann made a "good-faith effort" by having Ms. Pol pursue the business visa. Mr. Erdmann certainly did everything "reasonable" by having Ms. Pol attempt to obtain a B1/B2 visa for business purposes. The K-1/K-2 visa would not be approved—per Department of Homeland

[1] Mr. Erdmann and Ms. Pol have been cohabitating for the past five years. In their minds, they are common law married. However, under Cambodia law, they can only get married legally if Mr. Erdmann earned over a certain level in Cambodia. He did not. As a result, they call themselves husband and wife—common law marriage—but are not married under Cambodian law.

Security's Website—until 2017, and therefore, was not a reasonable option. As a result of the United States' denial of Ms. Pol's B1/B2 visa, Ms. Pol is unavailable to testify.

**2. <u>Ms. Pol's Proposed Testimony is Material to Mr. Erdmann's Affirmative Defense Pursuant to 18 U.S.C. § 2250(c)</u>.**

The Government argues in its brief that Ms. Pol's testimony is immaterial or irrelevant to the elements of 18 U.S.C. § 2250(a). The Government, however, failed to address the materiality of Ms. Pol's testimony pursuant to 18 U.S.C. § 2250(c).

18 U.S.C. § 2250(c) provides an affirmative defense to prosecution under 18 U.S.C. § 2250(a) if:

> (1) Uncontrollable circumstances prevented the individual from complying;
>
> (2) The individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and
>
> (3) The individual complied as soon as such circumstances ceased to exist. 18 U.S.C. § 2250(c).

With respect to testimony regarding the first element, Ms. Pol was present at the scene of the motorcycle crash which resulted in the compound fracture of Mr. Erdmann's left tibia in Cambodia. Ms. Pol is expected to testify to when, where, and how Mr. Erdmann's leg was broken explaining the cause of the uncontrollable circumstances. Ms. Pol is also expected to authenticate pictures of the injured leg from March and April 2016 for introduction into evidence. Ms. Pol will finally be expected to testify that Mr. Erdmann went straight from the hospital in Cambodia to the airport to fly to the United States. Mr. Erdmann quickly ended up in the hospital in Florida after his arrival, and subsequently had another surgery on his leg on May 6, 2016—followed by extensive recovery.

With respect to testimony regarding the second element, based on her personal

knowledge of the cause of the accident, Ms. Pol is expected to testify that Mr. Erdmann did not contribute to the creation of the injuries in reckless disregard of the requirement to comply. *See* Fed. R. Evid. 602. There are no other witnesses within the United States (other than Mr. Erdmann) who can competently testify to what happened in Cambodia. *See id.* As a result, the Government's argument that Ms. Pol's testimony would be cumulative is without merit. United States' Response, Doc. 29, pg. 10. Ms. Pol's testimony is essential to showing that Mr. Erdmann did not cause the injury or contribute to the injury in reckless disregard of the requirement to comply. The Fifth Amendment demands that Mr. Erdmann be permitted to put on his affirmative defense, including Ms. Pol's essential testimony.

The Government also argues that Mr. Erdmann could testify—waiving his Fifth Amendment Right Not to Testify—and that, therefore, Ms. Pol's testimony is cumulative. To support this proposition, the Government cites *United States v. Hajebeh*, 284 F.Supp. 2d 380, 385-86 (E.D. Va. 2003). The Government argues "an incentive to testify does not amount to compulsion." United States' Response, Doc. 29, pg. 10. The Government <u>fails</u>, however, to cite *United States v. Jefferson*, 594 F.Supp.2d 655, 668 n. 18 (E.D. Va. 2009), in which Judge Ellis—the same District Court Judge in *Hajebeh*—concludes that "the better and more persuasive view is to construe Rule 15 so as not to infringe a defendant's Fifth Amendment right in any way. The view to the contrary in *Hajbeh*, 284 F.Supp.2d at 385-86, is no longer persuasive." In short, Judge Ellis overruled his own decision in *Hajbeh*, which is no longer good law.[2] A witness cannot be deemed cumulative because the defendant could waive his Fifth Amendment Right to remain silent. *See id.*

[2] The Government also cited *United States v. Feijoo-Tomala*, 751 F. Supp. 40, 43-44 (E.D.N.Y. 1990) and *United States v. Thomas*, 62 F.3d 1332, 1341 (11th Cir. 1995), but neither of these cases conclude that the testimony is cumulative because the defendant could have testified in lieu of an unavailable witness. These decisions rest on the existence of other available witnesses (or in the case of *Thomas* a stipulation).

Additionally, the United States Supreme Court in *Brooks v. Tennessee*, 92 S.Ct. 1891, 1894-1895 (1972), held that a Tennessee statute impeding the right to remain silent—by requiring a defendant to testify as the first witness in his case-in-chief, if at all—was unconstitutional because "the rule, in other words, 'cuts down on the privilege (to remain silent) by making its assertion costly." To prevent Mr. Erdmann from calling Ms. Pol as a witness because her testimony would be cumulative to Mr. Erdmann's testimony, would force Mr. Erdmann to testify in lieu of calling a competent witness who has been subpoenaed. Similar to *Brooks*, preventing Ms. Pol from testifying would place "a heavy burden on a defendant's otherwise unconditional right not to take the stand." *Id.* at 1894. Such a burden on the Fifth Amendment is unconstitutional. *See id.*; *Jefferson*, 594 F.Supp.2d at 668 n. 18.

**3. Substantial Injustice Would Not Result to the Government if Ms. Pol is Deposed.**

The Eleventh Circuit has ruled that "[d]epositions, particularly those taken in foreign countries, are generally disfavored in criminal cases." *United States v. Siddiqui*, 235 F.3d 1318, 1323 (11th Cir. 2000). However, the Eleventh Circuit also acknowledges that "depositions are authorized 'when doing so is necessary to achieve justice and may be done consistent with the defendant's constitutional rights." *Id. citing United States v. Mueller*, 74 F.3d 1152, 1156 (11th Cir. 1996). In *Siddiqui,* cited by the Government in its brief, the Government requested multiple depositions in India—not subject to the sanction of perjury—and that motion was granted, and the depositions were completed. *See Siddiqui*, 235 F.3d at 1323-1324; United States' Response, Doc. 29, pg. 2.

The Government also cites *United States v. Alvarez*, 837 F.2d 1024 (11th Cir. 1988) in support of the proposition that foreign deposition testimony is suspect. *See* United States' Response, Doc. 29, pg. 10. The Government fails to state in its brief that the Court denied the

deposition because the request was based on the witness trying to avoid the cost of traveling from Aruba to Miami. *See Alvarez*, 837 F.2d at 1029. The basis for denial of the deposition was not the lack of a perjury sanction. *Id.* Ms. Pol is willing, ready, and able to travel to Fort Myers, Florida. The problem is not Ms. Pol's unwillingness to travel to Florida. The problem is the Government's unwillingness to allow her into the country. As a result, *Alvarez* does not support the Government's argument that a foreign deposition would result in a substantial injustice.

Mr. Erdmann's preference is that the Government assist Mr. Erdmann with obtaining a brief visa or parole for Ms. Pol so that she can testify. Such a visa or parole would ensure that the Government's concerns about perjury and the jury's ability to observe the demeanor of the witness are resolved. *See* United States' Response, Doc. 29, pg. 10-12. The Government previously had no problem obtaining parole for its material witness Juan Gonzalez-Gonzalez in the case of *United States v. Michael J. Ronga*, 2:15-cr-13-FtM-38CM, Doc 29, pg. 3. In that case, the Government had no concerns about deporting Mr. Gonzalez-Gonzalez to Guatamala after trial—no longer within the United States jurisdiction. The Government also had no problem deposing witnesses favorable to the Government in India in *Siddiqui*. *See Siddiqui*, 235 F.3d at 1323-1324. It would be a gross injustice to now deny Mr. Erdmann's request for a deposition of Ms. Pol because the deposition would be in Cambodia. The Government cannot have its cake and eat it too. If the Government is truly concerned about perjury, then the Government can assist in having Ms. Pol paroled into the country for trial. Otherwise, the deposition should be completed in Cambodia—similar to *Siddiqui*. *Id.*

The Government has raised concerns that Ms. Pol is biased as Mr. Erdmann's common law wife. *See* United States' Response, Doc. 29, pg. 11. Such bias could easily be dealt with on

cross examination. It should be noted that the Government did not dispute any of the expected testimony by Ms. Pol in its Response. *See id.*

**4. <u>Government's Logistical Concerns Are Not Meritorious</u>**.

The Government raises logistical concerns which are not part of the three part test set forth in *United States v. Drogoul*, 1 F.3d 1546, 1554 (11th Cir. 1993). Nevertheless, such concerns lack any merit. Once the Motion for Deposition (or videoconferencing) is granted, Defense Counsel anticipates contacting the United States Embassy in Phnom Penh, Cambodia to see if the deposition can be conducted there (or if video teleconferencing is allowed, if that is an option). Moreover, through a cursory review of the internet, Olender Legal Solutions provides court reporters and video conferencing in Cambodia.[3] As the Court knows, the world economy is now global. American businesses—including civil law firms—do business all over the world, including Cambodia. Depositions can be completed in Cambodia. Video conferencing can be completed in Cambodia. The Government is simply trying to come up with any excuse to deny Mr. Erdmann's Fifth Amendment Right to a Fair Trial and Sixth Amendment Right to Compulsory Process of Witnesses.

WHEREFORE, Mr. Erdmann's Motion for Deposition should be granted. Or in the alternative, Mr. Erdmann would be equally amenable to Ms. Pol testifying through videoconferencing.

[3] Olender Legal Solutions' website is http://www.olenderlegal.com/cambodia-court-reporter-video-conference.

Respectfully submitted,
Donna Lee Elm
Federal Defender

/s/ *G. Ellis Summers, Jr.*
G. Ellis Summers, Jr.
Florida Bar No. 0815691
Assistant Federal Defender
1514 Broadway, Suite 301
Fort Myers, Florida 33901
Telephone: 239-334-0397
Facsimile: 239-334-4109
E-Mail: ellis_summers@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of September, 2016, the foregoing was electronically filed with the Clerk of Court and a copy will be sent electronically to Michael Bagge-Hernandez, Assistant United States Attorney, 2110 First Street, Fort Myers, FL 33901.

/s/ *G. Ellis Summers, Jr.*
G. Ellis Summers, Jr.
Assistant Federal Defender